**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LANA BRIDGET EUGINIA FLORES,**

**Plaintiff,**

**v.** **CASE NO:**

**OHI WEST MEDICAL GROUP II, LLC**

**d/b/a FLORIDA MEDICAL CLINIC ORLANDO HEALTH,**
**Defendant.**
______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, LANA BRIDGET EUGINIA FLORES, (hereinafter "Plaintiff" or "Ms. Flores"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, OHI WEST MEDICAL GROUP II, LLC d/b/a FLORIDA MEDICAL CLINIC ORLANDO HEALTH (hereinafter "Defendant," "Florida Medical Clinic," or "the Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil

Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendant of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her disability, failed to provide reasonable accommodation, failed to engage in the interactive process, subjected her to a hostile work environment, and retaliated against her in violation of her rights under the ADA and the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pasco County, Florida.

**PARTIES**

8. Plaintiff is LANA BRIDGET EUGINIA FLORES, a forty-seven-year-old female who has been diagnosed with Complex Post-Traumatic Stress Disorder (CPTSD), panic attacks, anxiety, depression, mood swings, mood instability, irritability, and rage episodes. These conditions substantially limit one or more major life activities, including caring for herself, sleeping, concentrating, thinking, communicating, and working.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability under the ADA, the FCRA, and the FMLA.

10. During the period from December 18, 2023, until July 8, 2025, Defendant employed Plaintiff as a Medical Receptionist.

11. At all times material herein, Plaintiff met the definitions of “employee” and “eligible employee” under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, the FCRA, and the FMLA.

13. The Defendant, OHI WEST MEDICAL GROUP II, LLC d/b/a FLORIDA MEDICAL CLINIC ORLANDO HEALTH, is a business entity

that employed Plaintiff at its office located at 2100 Via Bella Blvd, Land O' Lakes, Florida 34639, Pasco County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pasco County, Florida, and employed fifteen or more employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADA, the FCRA, and the FMLA.

16. Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff. Defendant is also liable under the FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On July 23, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations

("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19. On June 7, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to her Charge of Discrimination (EEOC Charge No. 511-2025-04168) against Defendant. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Rights from the EEOC.

20. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21. All conditions precedent to bringing this action have been performed or have occurred.

**GENERAL ALLEGATIONS**

22. Plaintiff has been diagnosed with Complex Post-Traumatic Stress Disorder (CPTSD), panic attacks, anxiety, depression, mood swings, mood instability, irritability, and rage episodes. These conditions substantially limit one or more major life activities, including caring for

herself, sleeping, concentrating, thinking, communicating, and working.

23. Plaintiff receives ongoing mental health treatment from therapist Emily Gilbert at Meridian Counseling and psychiatrist Dr. Rad Gharavi at Progressive Psychiatry.

24. On December 18, 2023, Defendant hired Plaintiff as a Medical Receptionist, earning $34,560.00 annually, at its office located at 2100 Via Bella Blvd, Land O' Lakes, Florida 34639. Plaintiff reported directly to Clinical Practice Supervisor Sharonda Stockton.

25. Throughout her employment, Plaintiff was able to perform the essential functions of her position at satisfactory or above-satisfactory levels, and she received no formal performance-related write-ups on file prior to the events described herein.

26. Plaintiff's supervisor, Sharonda Stockton, regularly praised Plaintiff's work and expressed a desire to move Plaintiff into a lead position for the office because her work was detailed and thorough. The providers in Plaintiff's office likewise praised Plaintiff's work in front of management, noting that they knew to send tasks to her because she would get the job done. Plaintiff's 2024 performance evaluation reflected an overall rating of "Usually," with her supervisor noting that she performs the essential

functions of her job, keeps patients and team members informed, and always displays a willingness to learn.

27. Beginning in approximately March and April 2024, Plaintiff began to experience significantly increased mistreatment when she was assigned an extreme workload with unrealistic performance expectations. For a period of approximately three to four months, and likely longer, Plaintiff was required to handle the responsibilities of three separate positions simultaneously with no assistance.

28. Plaintiff repeatedly raised concerns regarding the workload and the conditions in the office, but her concerns were not meaningfully addressed. After Assistant Director of Practice Operations Jennifer Pla assumed authority over the office, Plaintiff was consistently targeted and harassed, particularly after she raised internal concerns about working conditions and reported that certain coworkers were not performing their basic job duties.

29. Ms. Pla issued Plaintiff a verbal warning to "stay in her lane," meaning that she should stop reporting coworkers' non-performance to management.

30. Plaintiff was subjected to disparate treatment compared to her

coworkers. While coworkers who failed to perform basic job duties faced no discipline, Plaintiff was consistently reprimanded or disciplined for raising concerns, asking for help, or performing her assigned duties.

31. On or about June 13, 2024, Plaintiff received a written warning arising from an emotional exchange with Ms. Stockton that occurred immediately after a meeting with management concerning her overwhelming workload. Plaintiff refused to sign the warning and immediately reported the matter to Human Resources Director Linda Lipnisky.

32. Ms. Lipnisky acknowledged that Plaintiff's reaction was normal, that she would have reacted the same way under the circumstances, and that she did not believe a write-up was warranted. Ms. Lipnisky stated that she would reach out to Ms. Pla's supervisor and follow up with Plaintiff, but she never did so, despite Plaintiff's follow-up emails requesting an update.

33. During this period, Plaintiff's position was changed to phone work, and she was given a fabricated job title of "Phone Coordinator" set forth in a document prepared by Ms. Pla on non-official letterhead. Human Resources Director Linda Lipnisky later confirmed that no such position as

"Phone Coordinator" existed within Defendant's organization.

34. Plaintiff was expected to field a very high volume of patient calls each day while simultaneously managing faxes and other duties, and she watched critical patient information, including appointments, surgeries, procedures, medication requests, and test results, accumulate and go unaddressed because the workload was more than any one person could reasonably handle.

35. In August 2024, Plaintiff submitted formal documentation under both the ADA and the FMLA outlining her diagnosed mental health conditions and requesting reasonable accommodation, including a modified work schedule to address mood fluctuations, sleep disturbances, anxiety, depression, and severe stress.

36. Plaintiff's therapist, Emily Gilbert, submitted letters on her behalf, including a letter dated August 21, 2024 requesting that Plaintiff be permitted to leave early on Fridays to attend bi-weekly therapy sessions, and a letter dated August 28, 2024 recommending a departmental transfer.

37. On or about September 9, 2024, Human Resources approved a modified schedule permitting Plaintiff to arrive late or leave early up to twice per week or to take one full day off per month as needed, and

permitting adjusted hours on days she had therapy sessions.

38. On September 10, 2024, Plaintiff sent a written request to Ms. Stockton and Debbie Frame seeking a meeting to discuss her ADA accommodations, and she specifically requested that Jennifer Pla not be present so that she could speak freely about her concerns.

39. Although the Company approved a modified schedule, the accommodation was inadequate to address Plaintiff's needs, and the Company failed to place her in a role that would not exacerbate her documented mental health conditions.

40. Although Ms. Stockton requested Plaintiff's FMLA documentation, Human Resources failed to communicate that documentation to Ms. Stockton. Ms. Stockton later told Plaintiff that she had never been made aware of what Plaintiff's ADA accommodation was for, and that had she known, she would never have placed Plaintiff in the positions she was assigned.

41. Ms. Stockton stated that she would instead have trained Plaintiff for the Authorization Referral Clerk position, a role in which Plaintiff would not have had to deal with patients or with certain coworkers. When that Authorization Referral Clerk position became available, Ms. Stockton

expressed to Ms. Pla that she wanted Plaintiff to have it, but Ms. Pla denied the placement, stating that she wanted someone with experience.

42. In retaliation for Plaintiff's complaints, Ms. Pla relocated Plaintiff's desk directly in front of her supervisor's desk for constant surveillance. The replacement workspace was not even a proper desk; it was a shelf unfit for working conditions, and Ms. Stockton placed a maintenance ticket in an effort to obtain a suitable desk for Plaintiff.

43. The work environment became so toxic that other employees transferred out of the department. Plaintiff informed the Assistant Director's supervisor, Director of Practice Operations Anissa Nichols, that she felt unsafe and did not trust Ms. Pla. The hostile environment became so unbearable that Plaintiff began leaving the building during her breaks to avoid being in Ms. Pla's presence.

44. In 2025, Plaintiff was subjected to a series of disciplinary actions arising from her interactions with a newly hired coworker, Loida Aguilar. On or about May 16, 2025, Plaintiff was disciplined after asking Ms. Aguilar to log into her workstation before opening time, an issue Plaintiff raised because Ms. Aguilar's persistent computer problems were delaying patient check-in.

45. On or about June 20, 2025, Plaintiff was again the subject of a disciplinary meeting after she questioned Ms. Aguilar about a scheduling error. During that incident, Plaintiff experienced a panic attack and began crying, and she told Ms. Stockton that she feared receiving another write-up from Ms. Pla.

46. Ms. Stockton investigated the matter, determined that Ms. Aguilar had not been truthful about the scheduling issue, and assured Plaintiff repeatedly that she would not receive a write-up. Nevertheless, during the June 20, 2025 meeting, Ms. Pla stated that she would seek approval to terminate Plaintiff's employment.

47. On June 23, 2025, Plaintiff sent a written complaint to Anissa Nichols, Ms. Pla's supervisor, reporting that she had been targeted and did not feel safe or comfortable around Ms. Pla, and requesting a meeting at which Ms. Pla would not be present so that she could express her concerns honestly and without fear. Ms. Nichols met with Plaintiff but minimized her concerns.

48. The final incident leading to Plaintiff's termination occurred on July 3, 2025, when Plaintiff assisted a patient who had found a credit card by taking the card and turning it in to her supervisor. Ms. Aguilar reported to

upper management that Plaintiff had embarrassed her in front of the patient.

49. On July 7, 2025, upon Plaintiff's return from the holiday weekend, Ms. Pla terminated Plaintiff's employment in person, with Ms. Stockton present. Ms. Pla referenced Plaintiff again not having "stayed in her lane" and stated that, because she had to address Plaintiff regarding Ms. Aguilar again, she was terminating Plaintiff's employment.

50. The official reason given for the termination, effective July 8, 2025, was "work performance and conduct." Plaintiff disputed the stated reasons and pointed out that her own supervisor had not issued a disciplinary action for the incidents and had assured her that a write-up or termination would not happen.

51. Ms. Stockton witnessed Plaintiff's mental health struggles and breakdown episodes and was against the discipline imposed for the final two work incidents.

52. At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

53. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered significant emotional distress

and economic harm. The stress of her work environment triggered and exacerbated her documented mental health conditions, including anxiety, panic episodes, and emotional breakdowns.

54. Plaintiff was prescribed additional medications, including Fluoxetine and Alprazolam ER, to cope with the emotional distress caused by her work environment, and she had to resume a prior medication after her distress worsened.

55. Plaintiff has also suffered damage to her professional reputation and the loss of her income and employer-sponsored benefits.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Disability Discrimination / Failure to Accommodate / Failure to Engage in the Interactive Process
### 42 U.S.C. §§ 12101-12213

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. At all times material, Defendant was an employer within the meaning of the ADA.

58. Plaintiff has been diagnosed with Complex Post-Traumatic Stress Disorder, panic attacks, anxiety, depression, and related conditions, which constitute a disability within the meaning of the ADA because they

substantially limit one or more major life activities, including caring for herself, sleeping, concentrating, thinking, communicating, and working.

59. At all times material, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

60. In August 2024, Plaintiff notified Defendant of her disability and requested a reasonable accommodation, including a modified work schedule and a departmental transfer, supported by documentation from her treating therapist.

61. Defendant's duty to provide a reasonable accommodation and to engage in a timely, good-faith interactive process was triggered by Plaintiff's request and by Defendant's knowledge of her disability and resulting limitations.

62. Although Defendant approved a modified schedule, that accommodation was inadequate to address Plaintiff's documented needs, and Defendant failed to place Plaintiff in a role that would not exacerbate her mental health conditions.

63. Defendant failed to engage in the interactive process in good faith, including by failing to communicate Plaintiff's accommodation and

FMLA documentation to Ms. Stockton, the supervisor responsible for Plaintiff's day-to-day assignments, and by denying Plaintiff the Authorization Referral Clerk reassignment that would have accommodated her disability.

64. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class, who were not subjected to the same discipline, scrutiny, and adverse treatment despite engaging in similar or worse conduct.

65. Defendant discriminated against Plaintiff because of her disability by subjecting her to discriminatory terms and conditions of employment, by failing to accommodate her disability, by failing to engage in the interactive process, and by terminating her employment.

66. As a direct and proximate result of Defendant's discrimination and failure to accommodate, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest,

attorneys' fees, costs, and all further relief the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Disability-Based Hostile Work Environment**
**42 U.S.C. §§ 12101-12213**

67. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

68. At all times material, Defendant was an employer within the meaning of the ADA.

69. Plaintiff suffers from a disability within the meaning of the ADA, and Plaintiff was qualified to perform the essential functions of her position.

70. During her employment, Plaintiff was subjected to unwelcome harassment because of her disability and/or the limitations associated with her disability, including targeting and harassment by Assistant Director Jennifer Pla, the surveillance-based relocation of her workspace, disparate discipline, and heightened scrutiny.

71. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile, and offensive work environment.

72. A reasonable person in Plaintiff's position would have found the work environment hostile or abusive, and Plaintiff in fact perceived it to be hostile and abusive, to the point that she began leaving the building during her breaks to avoid Ms. Pla's presence.

73. Defendant knew or should have known of the harassment, including through Plaintiff's complaints to Human Resources and to Ms. Pla's supervisor, and failed to take prompt and effective remedial action reasonably calculated to stop the harassment.

74. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, loss of dignity, and other compensatory damages, as well as economic damages to the extent proven.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

76. At all times material, Defendant was an employer within the meaning of the ADA.

77. Plaintiff engaged in protected activity under the ADA by disclosing her disability, submitting formal ADA documentation and requesting reasonable accommodations in August 2024, requesting meetings to address her accommodations and her treatment, and complaining about disability-related discriminatory treatment.

78. Defendant knew of Plaintiff's protected activity.

79. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including the surveillance-based relocation of her workspace, disparate discipline, heightened scrutiny, denial of a reassignment, and ultimately termination of her employment.

80. Defendant's actions would dissuade a reasonable employee from requesting accommodation or opposing disability discrimination.

81. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, including the close temporal proximity between Plaintiff's June 23, 2025 complaint to Anissa Nichols and her termination days later.

82. Defendant's stated reason for terminating Plaintiff was false and pretextual, including because Plaintiff's own supervisor did not believe discipline was warranted for the final incidents and had assured Plaintiff that she would not be written up or terminated.

83. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Disability Discrimination / Failure to Accommodate
## Fla. Stat. §§ 760.01-760.11

84. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

85. At all times material, Defendant was an employer within the meaning of the FCRA.

86. Plaintiff's Complex Post-Traumatic Stress Disorder, panic attacks, anxiety, depression, and related conditions constitute a handicap or disability within the meaning of the FCRA.

87. At all times material, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

88. Plaintiff notified Defendant of her disability and requested a reasonable accommodation, including a modified schedule and a departmental transfer.

89. Despite notice of Plaintiff's disability and accommodation need, Defendant failed to provide a reasonable accommodation and failed to engage in the interactive process, including by failing to route Plaintiff's accommodation documentation to her supervisor and by denying Plaintiff

the Authorization Referral Clerk reassignment that would have accommodated her disability.

90. Defendant thereby discriminated against Plaintiff because of her disability in the terms, conditions, and privileges of employment, and terminated her employment, in violation of the FCRA.

91. As a direct and proximate result of Defendant's disability discrimination and failure to accommodate, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

## COUNT V
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Disability-Based Hostile Work Environment
## Fla. Stat. §§ 760.01-760.11

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

93. At all times material, Defendant was an employer within the

meaning of the FCRA.

94. Plaintiff suffers from a handicap or disability within the meaning of the FCRA, and Plaintiff was qualified to perform the essential functions of her position.

95. During her employment, Plaintiff was subjected to unwelcome harassment because of her disability, including targeting and harassment by Assistant Director Jennifer Pla, the surveillance-based relocation of her workspace, disparate discipline, and heightened scrutiny.

96. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile, and offensive work environment, which Plaintiff subjectively perceived as hostile and abusive and which a reasonable person in Plaintiff's position would have found hostile or abusive.

97. Defendant knew or should have known of the harassment, including through Plaintiff's complaints to Human Resources and to Ms. Pla's supervisor, and failed to take prompt and effective remedial action reasonably calculated to stop the harassment.

98. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including emotional distress, humiliation,

mental anguish, loss of dignity, and other compensatory damages, as well as economic damages to the extent proven.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Retaliation**
**Fla. Stat. §§ 760.01-760.11**

99. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

100. At all times material, Defendant was an employer within the meaning of the FCRA.

101. Plaintiff engaged in protected activity under the FCRA by disclosing her disability, requesting reasonable accommodations, requesting meetings to address her accommodations and her treatment, and complaining about disability-related discriminatory treatment, including her June 23, 2025 complaint to Anissa Nichols.

102. Defendant knew of Plaintiff's protected activity.

103. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including the surveillance-based relocation of her workspace, disparate discipline, heightened scrutiny, denial of a reassignment, and ultimately termination of her employment.

104. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions, and Defendant's stated reason for termination was false and pretextual.

105. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

## COUNT VII
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## Interference
## 29 U.S.C. § 2601 et seq.

106. Plaintiff re-alleges and incorporates by reference paragraphs 1

through 55 as though fully set forth herein.

107. At all times material, Plaintiff was an eligible employee within the meaning of the FMLA.

108. At all times material, Defendant was an employer within the meaning of the FMLA.

109. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

110. In August 2024, Plaintiff submitted formal documentation under the FMLA outlining her diagnosed mental health conditions and requesting reasonable accommodation, thereby exercising and attempting to exercise rights protected by the FMLA.

111. Defendant interfered with, restrained, and denied Plaintiff's exercise of rights under the FMLA, including by failing to properly route and honor Plaintiff's FMLA documentation, using Plaintiff's disability-related needs and documentation as a negative factor in its treatment of her, and terminating her employment following the exercise of her rights.

112. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, and is entitled

to all damages and equitable relief authorized by the FMLA.

113. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the FMLA, including lost wages, lost salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre-judgment and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT VIII**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Retaliation**
**29 U.S.C. § 2601 et seq.**

114. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

115. At all times material, Plaintiff was an eligible employee within the meaning of the FMLA.

116. At all times material, Defendant was an employer within the meaning of the FMLA.

117. Plaintiff engaged in activity protected by the FMLA by

requesting FMLA leave and submitting FMLA documentation in connection with her serious health condition.

118. Defendant knew Plaintiff engaged in protected activity under the FMLA.

119. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including disparate discipline, heightened scrutiny, and ultimately termination of her employment.

120. There is a causal connection between Plaintiff's exercise of FMLA rights and Defendant's materially adverse actions, and Defendant's stated reason for termination was false and pretextual.

121. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, and is entitled to all damages and equitable relief authorized by the FMLA.

122. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the FMLA, including lost wages, lost

salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre-judgment and post-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 22nd day of September 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com